**UNITED STATES of America,**
**Appellee,**

**v.**

**Fernando MONTILLA–RIVERA,**
**Defendant, Appellant.**

**No. 98–1729.**

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1999.

Decided March 22, 1999.

---

were directly involved in the transaction, the government claimed that Montilla was the lookout. After a four day jury trial, Montilla was convicted. He subsequently sought a new trial based on previously unavailable evidence, but the court found that the evidence was not newly discovered and denied his motion. On appeal, we concluded that Montilla's evidence was sufficiently new for the purposes of his motion and remanded for a hearing on whether it met the standard for ordering a new trial. After the district court held the hearing, it ruled that the standard had not been satisfied, and denied his motion. Montilla again appeals. Because the district court did not abuse its discretion in denying Montilla's motion, we affirm its decision.

## I. *Background*

The factual background was detailed in our earlier decision, *United States v. Montilla–Rivera* 115 F.3d 1060 (1st Cir.1997). Rather than repeat ourselves, we will review only that evidence relevant to the claim currently before us.

On March 22, 1995, a confidential government informant approached Calderón about purchasing drugs. Calderón suggested that they go "see the mechanic" and arranged to meet two days later. When they did meet, Calderón took the informant to an auto repair shop behind a nightclub. Zorilla and Montilla were mechanics at that auto shop at various times, and were both waiting there for Calderón and the informant. When the two arrived, they went with Zorilla and Montilla into a small room inside the back of the shop.[1]

Calderón and Zorilla negotiated to sell the informant two kilograms of cocaine while Montilla stood ten to twelve feet away by the door "watching and looking." Once the price and quantity had been agreed upon, Zorilla made a call to have

Marlene Aponte Cabrera, by appointment of the Court, for appellant.

Camille Velez–Rive, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jose A. Quiles–Espinosa, Senior Litigation Counsel, were on brief for appellee.

Before BOUDIN, Circuit Judge, COFFIN, Senior Circuit Judge, and LYNCH, Circuit Judge.

COFFIN, Senior Circuit Judge.

Federal agents arrested defendant-appellant Fernando Montilla Rivera ("Montilla") in a drug sting, along with Miguel Calderón ("Calderón") and Ramon Zorilla ("Zorilla"). While Calderón and Zorilla

---

1. As will be discussed, *see infra* pp. 8–12, Montilla's presence in the room and whereabouts during the subsequent exchange were in dispute at trial and at the evidentiary hearing.

the drugs delivered, and the informant called DEA Agent Carrasquillo ("Agent Carrasquillo") to arrange for the money. When the drugs were delivered, the informant found the quality of the cocaine to be good, so he and Calderón went to a nearby shopping center to meet Agent Carrasquillo and get the money. Zorilla and Montilla stayed at the shop with the cocaine.

After he had seen the money, Calderón returned to the repair shop; the informant and Agent Carrasquillo followed ten minutes later. When they arrived, the informant reentered the small room and told the others that his partner, Agent Carrasquillo, would not come inside and would only buy the cocaine outside where Carrasquillo was parked. After some disagreement about where the exchange would take place, Montilla, Zorilla, and Calderón went outside. Calderón approached Agent Carrasquillo's car with the cocaine. When the delivery was made, federal agents quickly arrested Calderón, Zorilla and Montilla.

At trial there was conflicting testimony as to whether Montilla was actually in the back room during the negotiations, and as to precisely where he was when the agents converged to arrest the three. The government recorded the operation in two ways: the informant wore an audio recording device, and a DEA agent named Rodriguez videotaped the auto shop from across the street. All parties agree that Montilla neither appears in the videotape nor is heard on the informant's audio tape. However, several government witnesses testified to Montilla's role as a lookout.

While both Calderón and Zorilla pled guilty, Montilla chose to go to trial. Before trial, Montilla moved to produce his codefendants to testify at trial, but they exercised their privileges against self-incrimination and refused to testify. The jury found Montilla guilty, and the court sentenced him to 60 months of imprisonment and eight years of supervised release.

After Calderón and Zorilla had been sentenced, Montilla requested that they attest to his innocence. He sent, and they signed, nearly identical affidavits stating that Montilla was not involved in the drug transaction for which they both had pled guilty. Claiming that Calderón's and Zorilla's testimony was previously unavailable, Montilla filed a post-conviction motion for a new trial. The district court denied the motion because it found that "the evidence was both known and available" at trial. *Montilla–Rivera*, 115 F.3d at 1065. On appeal, this court refused to apply a categorical rule that exculpatory affidavits from codefendants who did not testify at trial because they exercised their Fifth Amendment privileges could never qualify as "newly discovered" evidence for the purposes of a motion for a new trial. *Id.* Instead, while "shar[ing] the general skepticism concerning [such belated exculpatory] statements [of codefendants]," we remanded to allow the district court to consider whether "the interests of justice require a new trial." *Id.* at 1067.

The district court held an evidentiary hearing at which both Calderón and Zorilla testified. The court subsequently issued an opinion and order finding that they were not credible, and that the inconsistency between their post-conviction statements and the trial testimony made it unlikely that the new evidence would lead to acquittal if a retrial were granted. Consequently, the court denied Montilla's motion, and he now appeals that decision to us.

## II. *Discussion*

█ Federal Rule of Criminal Procedure 33 empowers a district court to grant a new trial "if required in the interest of justice." As we said in Montilla's previous appeal, if "the motion is based on new or previously unavailable evidence, the defendant has to establish that the evidence was: (i) unknown or unavailable at the time of trial, (ii) despite due diligence, (iii) material, and (iv) likely to result in an

acquittal upon retrial." *Montilla–Rivera,* 115 F.3d at 1064–65 (citations omitted).

Citing our earlier opinion, the district court determined that the first three elements had been met. Calderón's and Zorilla's statements were unavailable to Montilla because each was exercising his Fifth Amendment privilege against self-incrimination. Montilla apparently exercised due diligence in his attempt to obtain their statements because he had tried on several occasions to interview them. And their statements were material because, if believed, the affidavits exculpated Montilla from any involvement in the drug transaction. The district court, therefore, found that the only element still in dispute was whether it was likely that the new evidence would result in acquittal if a new trial were held. Reiterating our skepticism about whether to believe the post-sentencing exculpatory testimony of two codefendants whose guilt was beyond dispute, the court found that Calderón's and Zorilla's testimony did not warrant a new trial.

▮ The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See United States v. Soto–Alvarez,* 958 F.2d 473, 479 (1st Cir.1992). We will reverse only if its decision constitutes a "manifest abuse of discretion." *United States v. Tibolt,* 72 F.3d 965, 972 (1st Cir.1995). Based on an assessment of the facts revealed at the trial and the new evidence, we are firmly convinced that the district court did not abuse its discretion. Instead, we agree with the district court that the new evidence "would [not] so undermine the government's case as to give rise to a 'reasonable' probability of acquittal on retrial." *Id.* (quoting *United States v. Sepulveda,* 15 F.3d 1216, 1220 (1st Cir.1993)). Montilla argues that the new testimony was crucial in four ways, but we are unpersuaded that it would lead to a different result.

**A.** *The identity of "the mechanic."*

Montilla contends that he was not "the mechanic" to whom Calderón was referring when Calderón and the informant went to "see the mechanic," and that testimony at the evidentiary hearing revealed that "the mechanic" was a man named Ramadés, the supplier who delivered the two kilograms to Zorilla.

Montilla's conviction as a lookout at the drug transaction did not turn on the identity of someone called "the mechanic." It revolved around whether Montilla was in the back room when the initial agreement was reached, and whether he was acting as a lookout outside when Calderón delivered the cocaine to Agent Carrasquillo's car. Although our previous opinion suggested that Montilla was the mechanic, *see Montilla–Rivera,* 115 F.3d at 1062, it was not clear from the testimony at trial whether "the mechanic" even referred to an individual. In any event, it is unlikely that the jury would have found that Calderón was referring to Montilla when he went to "see the mechanic" because Montilla was only a minor participant in the deal and not directly involved in setting the terms and price.

Testimony that Montilla was not "the mechanic" makes it no less likely that the jury would conclude that he was a lookout during the drug transaction.

**B.** *Sharing the profits from the transaction.*

Montilla also points to Calderón's and Zorilla's testimony that they were not going to share the profits from the drug transaction with him. Again, this assertion fails to undermine the strength of the government's case in any meaningful way. The conviction was based on a finding that he was a lookout because he was carefully watching the initial negotiation and observed the delivery from a distance. Whether or not he would receive a share of the profits does not invalidate the evidence on which his conviction was based. Although the conviction certainly would be

bolstered by testimony to the contrary, the fact that Montilla was not going to receive a portion of the proceeds does not discredit the jury's finding. It certainly does not create the requisite "reasonable probability" that he would be acquitted upon retrial.

### C. *Montilla's location during the transaction.*

Next Montilla argues that Calderón's and Zorilla's testimony about his whereabouts during both the negotiation and the exchange significantly changes the picture presented by the trial evidence. Because this argument directly implicates the basis for the jury's decision, we will consider testimony involving Montilla's location in detail.

At the trial and the evidentiary hearing, the court heard a substantial amount of evidence regarding Montilla's position at the moment of the actual transaction. The government's witnesses all agreed that Montilla was standing in front of the workshop. First, Agent Rodriguez stated that he saw Montilla being arrested "in front of the [auto] repair shop" near a blue van. Next, the informant noted that Montilla witnessed the transaction outside next to the shop door, close to the same van. Finally, Agent Carrasquillo testified that Calderón, Zorilla and Montilla came out of the shop together, and, when Calderón approached the car with the drugs, Montilla was standing just to the left of the entrance to the workshop.

While the government's witnesses consistently insisted that Montilla observed the deal, Montilla's witnesses contradict one another. At trial, Montilla produced both Angel Morla ("Morla"), who was the owner of the auto repair shop, and Louis Alfonseca ("Alfonseca"), who was visiting with Morla and Montilla. Alfonseca claimed that when Montilla "went out[side] to smoke a cigarette," the federal agents rushed in. Similarly, Morla alleged that just before the arrests were made, Montilla went outside for a cigarette and a soft drink. Later in his testimony Morla suggested that Montilla was arrested under a car outside in front of the nightclub adjoining the auto shop, and not in the shop itself. Hence, both these witnesses placed Montilla outside the shop at the time of the arrests.

On the other hand, Calderón and Zorilla both place Montilla somewhere inside the shop. At the evidentiary hearing Calderón testified that at the time of the arrests he saw Montilla being pulled from underneath the car he was working on in the shop. Zorilla claimed to have seen Montilla being brought from the back of the shop.

In short, then, Calderón's and Zorilla's statements do not furnish new evidence supporting Montilla's defense. Instead, they provide an entirely different version of the events. All witnesses at trial agreed that Montilla was somewhere outside the shop. The government's theory was that he was standing by the entrance to the workshop acting as a lookout. Montilla's defense at the time was that he was having a cigarette or was under a car in front of the adjoining nightclub. Now Montilla claims he was inside the shop either under a car or in the back. This inconsistency regarding the central aspect of his defense substantially weakens Montilla's assertion that he is likely to be acquitted upon retrial.

As for whether Montilla was involved in the initial negotiations, there is a direct contradiction between the informant's testimony and that of Calderón and Zorilla. The confidential informant testified that Montilla was present during the initial negotiation. Although Montilla is not heard on the audio recording, the informant testified that Montilla was standing silently inside the room by the entrance. The informant noted that Montilla was "ten or twelve feet" away from the negotiation and "was watching, looking" while Calderón and Zorilla were negotiating the drug transaction. The informant also stated

that when the drugs were delivered and tested, Montilla was in essentially the same place observing him. On the other hand, at the evidentiary hearing Calderón and Zorilla claimed that Montilla was not in the room during the initial negotiations.

These statements present two different versions of the initial negotiations. In assessing whether an acquittal is likely, the court had to weigh the witnesses' credibility. *Montilla–Rivera,* 115 F.3d at 1067. Here again we have no doubt that the district court properly believed the government's witnesses and questioned both Calderón's and Zorilla's credibility. With respect to the informant the district court specifically found neither any "potent reason for discrediting [his] testimony[,]" nor any "motive, bias, contradiction or inherent error in [his] factual testimony as to Montilla." *United States v. Rivera,* 9 F.Supp.2d 81, 88 (D.P.R.1998).

Although there was no reason to disbelieve the informant, the court cited a variety of grounds on which to question Calderón's and Zorilla's statements. In addition to the inconsistency with the testimony at trial regarding Montilla's whereabouts during the exchange, the court noted that each provided exculpatory testimony only after sentencing pursuant to a guilty plea. At the time of their affidavits Calderón and Zorilla had nothing to lose by exonerating Montilla. Both had already been convicted and sentenced. They were in a position to say "whatever they [thought] might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they [were] safe" from any increased punishment for the transaction. *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (9th Cir.1992). Numerous courts have found such post-sentencing exculpatory testimony of co-conspirators to be "inherently suspect." *United States v. Sim-*

*mons,* 714 F.2d 29, 31 (5th Cir.1983). Under the circumstances, we have no reason to disagree with the court's finding that Calderón and Zorilla were not credible.

### D. *Statements of Montilla's innocence.*

Montilla's final basis for a new trial is that Calderón and Zorilla filed nearly identical affidavits stating that he was not involved in the drug transaction in question.[2] As we have stated, however, the district court justifiably discounted their testimony. By nature, this sort of blanket exoneration of Montilla by two alleged co-conspirators who had pled guilty and had been sentenced is " 'untrustworthy and should not be encouraged.' " *Montilla–Rivera,* 115 F.3d at 1066 (quoting *Reyes–Alvarado,* 963 F.2d at 1188). As with the other evidence, these statements do not lead to a reasonable probability that Montilla would be acquitted on retrial.

### III. *Conclusion*

Because it is "sheer speculation" that "the newly discovered evidence would change the jury's decision," *United States v. Nero,* 733 F.2d 1197, 1205 (7th Cir.1984), the district court did not abuse its discretion in denying Montilla's motion for a new trial.

*Affirmed.*

---

**2.** The fact that the affidavits are virtual duplicates of one another does not in our minds weigh heavily. Presumably their similarity stems from the fact that Montilla prepared

both, and Calderón and Zorilla simply signed them. We admit, however, that their credibility would be bolstered had each written his own statement.