# United States Court of Appeals

## For the First Circuit

No. 00-2129

FRED AWON,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Circuit Judge,

Campbell and Bownes, Senior Circuit Judges.

Robert A. George for appellant.
James Francis Lang, Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, was on brief for
appellee.

October 25, 2002

**CAMPBELL**, <u>**Senior Circuit Judge**</u>.   The petitioner-appellant, Fred Awon ("Awon") was convicted of arson and mail fraud arising from the orchestration, on two occasions, of the arson of a building and the submission of insurance claims.  Following conviction, Awon moved for a new trial and to vacate his sentence pursuant to 28 U.S.C. § 2255 (2000), citing newly discovered evidence and a lack of federal jurisdiction.  The newly discovered evidence contained in five, allegedly exculpatory affidavits.  The district court, after holding an evidentiary hearing, denied both motions and, upon Awon's request, issued a certificate of appealability under 28 U.S.C. § 2253(c).  Finding no error, we affirm.

## I.      Background

Awon and his father owned rental income property located at 106-108 Ames Street (the "Ames Street property") in Brockton, Massachusetts, that consisted of unimproved rental space on the first floor and two apartments on the second floor.  On September 16, 1994, the Brockton Fire Department extinguished a fire in the vacant first floor space before significant damage occurred.  The Awons filed a claim with their insurance company for the damage from this fire and were paid in settlement $4,171 for the damage.  In the early morning hours of January 18, 1995, another fire at the building resulted in the destruction not only of the Awon's building but of three adjacent buildings as well.  The Awons again

filed a claim with their insurance company and negotiated a settlement of $85,000 for the loss of the building and demolition expenses, and $6,176 for lost rental income.

Investigation of the two fires resulted in an eight count indictment charging Awon and two co-defendants, James St. Louis and Joaquim Neves ("Joaquim") with arson and mail fraud. In Counts I through IV, Awon and James St. Louis were charged with arson, in violation of 18 U.S.C. § 844(i) (2000) (Count I), mail fraud in violation of 18 U.S.C. § 1341 (Counts II and III), and use of a fire to commit a felony, in violation of 18 U.S.C. § 844(h) (Count IV). Those four counts related to the September 16, 1994, fire and the subsequent filing of an insurance claim. Awon, James St. Louis and Joaquim were charged in Counts V through VIII with four corresponding offenses, arson (Count V), mail fraud (Counts VI and VII) and use of fire to commit a felony (Count VIII). The latter four counts pertained to the January 18, 1995, fire and the filing of the second insurance claim. Prior to trial, Joaquim pleaded guilty to Counts V, VI, and VII (Count VIII was dismissed) and, pursuant to a cooperation agreement with the government, testified at trial as a witness against his two co-defendants, Awon and James St. Louis.

A.      The Trial

Joaquim, testifying pursuant to a plea agreement, stated at trial that, in the summer of 1994, Anse St. Louis had asked him,

-3-

purportedly on Awon's behalf, if he would burn the Ames Street property. Although initially hesitant, he agreed to commit the arson and solicited the help of James St. Louis. Joaquim further testified that he had several conversations directly with Awon about the arson and the promised pay-off. According to Joaquim's testimony, Awon agreed to pay him $5,000 for committing the arson. Just prior to the first fire, however, Joaquim was detained by the Immigration and Naturalization Service ("INS") which had begun deportation proceedings against him.

Jorge Neves ("Jorge"), Joaquim's brother, testified at trial that while Joaquim was in INS custody, James St. Louis sought Jorge's help to burn the Ames Street property. Jorge said that James St. Louis promised that they would be paid by Awon for the arson. Jorge testified, however, that he never spoke directly to Awon regarding the fire or payment. Jorge further testified that, on September 16, 1994, he and James St. Louis spread gasoline around the first floor of the building, ignited it, and fled in James St. Louis' car. The fire was quickly extinguished. Because "nothing happened," Jorge testified that he was never paid for the arson. As the result of his cooperation and testimony, Jorge was not prosecuted for his involvement in setting the September 16, 1994, fire.

Joaquim testified that, after his own release from INS custody in November, 1994, he was again approached by Anse St.

-4-

Louis, on behalf of Awon, with the request that he burn the Ames Street property. Joaquim said he agreed and that he again solicited James St. Louis to help him. According to Joaquim, Joaquim was to receive a cash payment for his involvement while James St. Louis had directly negotiated with Awon for the receipt of a used Ford Taurus from Awon's car dealership. On January 18, 1995, Joaquim and James St. Louis drove to the Ames Street property in the car of Joaquim's girlfriend, Sandy Casamiro, and set the building on fire. The two men returned to Joaquim's house, placed their soiled clothes in a bag, awakened Casamiro, and had her drive them to a nearby dumpster to discard their clothing. Casamiro corroborated Joaquim's testimony about the late night excursion to discard the clothing worn at the time of the arson. The next day, according to the records of Awon's used car dealership, Awon transferred a Ford Taurus to James St. Louis for $2,000. Joaquim testified that, a week later, he received $2,100 in cash from Awon.

Testifying on behalf of Awon, Anse St. Louis said that he never spoke with Awon or Joaquim about the burning of the Ames Street property. Awon's parents testified that they were the owners and actual parties in interest with respect to the building and that Awon's involvement was limited to responding to maintenance requests and showing the building to prospective tenants. In essence, it was their testimony that Awon had no financial stake in the property. Awon testified that he believed

-5-

that Joaquim had set the fire in retaliation for Awon's refusal to post bail for Joaquim when he was in INS custody and in reaction to an argument between the two men prior to the second fire.

The jury found Awon guilty of all counts. James St. Louis was acquitted of the first four counts, those related to the September 16, 1994, fire, and found guilty of the remaining four counts. Awon was sentenced to a 153-month term of imprisonment, which represented a downward departure from the applicable guideline sentencing range of 198 to 217 months. Awon was also ordered to pay restitution to the Scottsdale Insurance Company in the amount of $95,788.36. This court affirmed his conviction on February 2, 1998. United States v. Awon, 135 F.3d 96 (1st Cir. 1998).

**B.       Post-conviction Proceedings**

On February 1, 1999, pursuant to 28 U.S.C. § 2255, Awon filed a Motion to Set Aside, Vacate, or Correct Sentence and, in an essentially duplicative pleading, he filed a motion for a new trial. In the two motions, Awon pursued identical claims: (1) that newly-discovered evidence warranted a new trial; and (2) that with respect to Count V of the indictment the government's evidence at trial was insufficient to satisfy the federal jurisdictional element of 18 U.S.C. § 841(i) (2000).[1]

---

[1]18 U.S.C. § 841(i) makes arson of a building "used in interstate or foreign commerce or in an activity affecting interstate or foreign commerce" a federal offense.

The newly-discovered evidence was set out in five affidavits. In their affidavits, Jorge Neves and Joaquim Neves recanted their trial testimony implicating Awon in the fires. Joaquim averred that he had falsified his testimony in the hopes of gaining favor with law enforcement officials and avoiding deportation. Jorge disavowed any statement he made on the stand implicating Awon and stated he had fingered Awon to avoid prosecution. James St. Louis, who did not testify at trial, averred that he was solely responsible for the planning of the second fire and that Awon played no part in the arson. Roberto Neves, the brother of Jorge and Joaquim Neves, stated that he and his family were threatened by the police that if Joaquim did not implicate Awon, their sister's children would be taken away and Roberto would be jailed. Roberto also reported that Joaquim had confessed to Roberto that he, Joaquim, had lied about Awon's involvement to "save himself" and receive a lower sentence. Roberto did not testify at trial. Finally, Awon submitted his own affidavit denying any involvement in the planning or execution of the fire and averring that James St. Louis had confessed to him that he and Joaquim had set the January 18, 1995, fire.

The district court held an evidentiary hearing on Awon's two motions. Through counsel, Joaquim notified the court that he withdrew his affidavit and recanted the statements he had made therein. Thereafter, at the hearing, the government called Joaquim

to testify. During his testimony at the evidentiary hearing, Joaquim described a four and one-half hour meeting with Awon's attorney that only ended when Joaquim agreed to sign the handwritten affidavit compiled by Awon's attorney. Joaquim stated that Awon's attorney informed him that he would not submit the affidavit to the court until Joaquim had signed and returned a typed copy of the affidavit. When Joaquim received the typed copy he discarded it and assumed the matter was closed. He reported being "surprised" when he discovered that Awon's attorney had filed the handwritten copy. Awon himself did not testify at the hearing on his two motions nor did James St. Louis or Jorge testify concerning the facts they had averred in their affidavits. Roberto, having been deported, was unavailable to testify. Although Awon's attorney was available to testify,[2] he did not take the stand to counter Joaquim's description of the events leading to the submission of Joaquim's affidavit. Awon presented no other testimony or documentary evidence to support his motions.

The government submitted an affidavit of Emanuel Gomes, the investigating officer from the Brockton Police Department. Gomes averred that he had neither threatened the Neves family nor had he made promises regarding Joaquim's or Jorge's cooperation in the investigation. In addition, the government submitted two

_____

[2]Anticipating that he might testify, Awon's attorney had obtained separate counsel to represent Awon at the evidentiary hearing.

reports compiled by Special Agent Thomas Wlodyka ("Wlodyka") of the Bureau of Alcohol, Tobacco and Firearms.[3] Wlodyka had interviewed both Joaquim and Jorge following the submission of their affidavits in support of Awon's post-conviction motions. Wlodyka reported that the brothers recanted their affidavits. Jorge stated that Awon's attorney presented him with an affidavit to sign; that Awon's attorney told Jorge that the statement was "basically what you said at the trial;" and that he did not review it prior to signing it. Joaquim's statement to Wlodyka was consistent with his testimony at the evidentiary hearing. Both men informed Wlodyka their trial testimony was truthful.

Following the evidentiary hearing, the district court denied both motions. The court did not consider Roberto Neves's affidavit to be "newly discovered." According to the district court, the fact that defense counsel failed to interview Roberto Neves prior to trial did not support a finding that his testimony was unknown or unavailable. Further, it found that Jorge's affidavit did not support a new trial because the portion of his trial testimony recanted in the affidavit was not critical to the prosecution's case. Thus, even if it were omitted it was unlikely to result in a different outcome for Awon. As to James St. Louis'

---

[3]It is unclear from the record whether the district court considered these unsworn reports in rendering its decision. Although the district court never explicitly ruled on the matter, the government acknowledges that the court was initially hesitant to do so.

affidavit, which was viewed with "great skepticism," the court found it incredible on its face. The district court acknowledged that Joaquim's affidavit was the most supportive of a new trial. At trial, Joaquim had provided the most damning testimony against Awon. In the end, however, it found Joaquim's testimony at trial, and his testimony at the evidentiary hearing recanting his affidavit, credible. Finally, without discussion, the district court stated that it considered Awon's argument that the government's evidence was insufficient to meet the jurisdictional element of 18 U.S.C. § 841(i) "unpersuasive."

The district court's order denying the two motions was filed on July 10, 2000. Awon filed a notice of appeal on August 11, 2000. This court held the appeal in abeyance pending the issuance of a certificate of appealability for an appeal of the denial of a motion under 28 U.S.C. § 2255 as required by 28 U.S.C. § 2253(c)(2). On January 3, 2001, the district court ordered a certificate of appealability.

**II.      Discussion**

**A.      Motion for a New Trial**

Awon failed to file a timely appeal from the denial of his motion for a new trial. Consequently, that appeal must be dismissed. United States v. Rapopart, 159 F.3d 1, 2 (1st Cir. 1998) (stating that compliance with time limits set forth in Fed. R. App. P. 4(b) is mandatory and jurisdictional).

-10-

The new trial motion, brought pursuant to Fed. R. Crim. P. 33, was denied on July 10, 2000, the day the district court also denied Awon's motion to vacate sentence, brought pursuant to 28 U.S.C. § 2255. Although Awon cited the same grounds for both motions, they are subject to different time limitations for the filing of a notice of appeal. Unless the district court grants an extension of time, which it did not do here, a party must appeal within ten days from the denial of a motion for a new trial made pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Fed. R. App. P. 4(b)(1)(A); United States v. Serrano, 870 F.2d 1, 11 (1st Cir. 1989). Awon filed his notice of appeal well out of time, on August 11, 2000, thirty days after the court's order denying the new trial motion.

B.        **Motion to Vacate Sentence**

The only appeal properly before us is from the denial of Awon's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The issues, as identified in the certificate of appealability, are whether to vacate Awon's sentence because of the alleged newly discovered evidence in the five affidavits and whether the district court lacked jurisdiction under the federal arson statute. Bui v. DiPaolo, 170 F.3d 232, 236 (1st Cir. 1999), cert. denied, 529 U.S. 1086 (2000).

On an appeal from the denial of a § 2255 motion, we review the district court's legal determinations de novo and the

-11-

court's factual findings for clear error. Familia-Consoro v. United States, 160 F.3d 761, 764-65 (1st Cir. 1998).

1.        **Newly Discovered Evidence**

Awon contends that the purported newly discovered evidence establishes his actual innocence. Assuming arguendo that Awon's claims of actual innocence based on the evidence in question can establish some legally cognizable basis for a motion under section 2255, the evidence proffered by Awon falls far short of demonstrating his innocence.

We quickly eliminate Awon's and Roberto's affidavits because they do not meet the standard for "newly discovered evidence." United States v. Desir, 273 F.3d 39, 42 (1st Cir. 2001). This court has held that a defendant seeking a new trial based on newly discovered evidence must prove four elements: (1) the newly discovered evidence was unknown or unavailable at the time of trial; (2) the defendant was duly diligent in trying to discover it; (3) the evidence was material; and (4) the evidence was such that it would probably result in an acquittal upon retrial. Id. Awon failed to prove that the information was either unknown or unavailable at the time of trial.

The "new" information in Awon's affidavit, James St. Louis's confession to Awon that he was solely responsible for the second fire, was plainly available at the time of trial. United States v. Levy-Cordero, 156 F.3d 244, 248 (1st Cir. 1998). In the

-12-

affidavit itself Awon asserts that on the day after that fire James St. Louis had confessed committing the arson to him. Why Awon did not reveal the confession at trial but instead suggested that Joaquim had set the second fire is best known to him. In any event, the concealed confession of his co-defendant cannot be deemed "newly discovered."

Roberto's testimony was also available at the time of trial. Awon argues that he had no reason to suspect that Roberto had information germane to his defense and thus cannot be penalized for failing to unearth and present Roberto's testimony. A defendant, however, must have been duly diligent in attempting to procure exculpatory evidence prior to trial. United States v. Conley, 249 F.3d 38, 44 (1st Cir. 2001). Simply because it may not have occurred to Awon and his counsel that Roberto had information regarding the crime that does not mean they were duly diligent on the facts of this case. Roberto was known to Awon as the brother of Joaquim and Jorge, the government's primary witnesses, both of whom were implicated in the crime. Roberto and his sister, Helena Neves, were interviewed by the police during the investigation. Indeed, it was Helena Neves, who was dating James St. Louis, who contacted the police and informed them that St. Louis and Jorge were involved in the arson. Moreover, the credibility of Roberto's affidavit was severely undermined, insofar as it related to conversations with Joaquim, by Joaquim's later repudiation of his

own affidavit and testimony at the evidentiary hearing. Similarly, Roberto's averments that he and his family were threatened by the police were neutralized by the affidavits of Detective Thomas Enos and Special Agent Thomas Wlodyka. Enos and Wlodyka, the officers primarily responsible for investigating the arson, denied that they had threatened Roberto, or his family, with adverse consequences if they did not implicate Awon.

On the other hand, James St. Louis's averments in his affidavit may indeed be deemed "newly discovered." United States v. Montilla-Rivera, 115 F.3d 1060, 1066 (1st Cir. 1997) (concluding that, in the context of a Rule 33 motion, a co-defendant's post-trial willingness to testify may be "newly discovered" if he had invoked 5th Amendment privilege at trial). But like the district court, we view James St. Louis's affidavit as lacking in credibility for reasons apparent on its face and from the record. Id. The trial court described James St. Louis's affidavit as incredible on its face. St. Louis averred that he had conceived, planned, and committed the arson on his own based upon his unverified hope that Awon, who had complained about the Ames Street property, would "take care of" him in the future. He further stated that, although unemployed at the time and notoriously short on cash, he had paid Awon $2,000 for the car and paid Joaquim $2,100 for his part in the arson. By the time of his affidavit St. Louis had nothing to lose by exonerating Awon. He had already been

convicted and sentenced. He was in a position to say whatever he thought might help Awon, "even to the point of pinning all the guilt on [himself], knowing [he was] safe" from any increased punishment for the transaction. United States v. Montilla-Rivera, 171 F.3d 37, 41 (1st Cir. 1999) (quoting United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992)). We accept the court's finding that St. Louis's affidavit was not credible.

Finally, the affidavits of Jorge and Joaquim Neves were discredited by Joaquim's additional testimony at the evidentiary hearing repudiating his own affidavit as well as other considerations. A repudiated recantation is not substantive evidence, and can be used at a new trial only to cross-examine the witness. United States v. Glantz, 884 F.2d 1483, 1486 (1st Cir. 1989). The affidavits alone cannot serve to establish Awon's innocence nor, given that they were later repudiated, are they a credible basis for expecting Jorge and Joaquim to testify differently at a new trial than previously.

The district court supportably found that Joaquim's testimony at the trial, and at the evidentiary hearing recanting his affidavit, was credible. As noted, we review the district court's factual determinations for clear error. Our deference is even greater where, as here, the factual findings are based on credibility determinations. United States v. Rostoff, 164 F.3d 63, 71 (1st Cir. 1999). In such cases, "error is seldom considered

'clear' unless the credibility assessments were based on testimony which was inherently implausible, internally inconsistent, or critically impeached." Keller v. United States, 38 F.3d 16, 25 (1st Cir. 1994). Joaquim's description of the events leading up to the submission of his affidavit was plausible and unrefuted. We find no error.

Respecting Jorge, the district court found that Jorge's recantation of his trial testimony, even if believed, would not result in Awon's acquittal.[4] Jorge had testified at trial that James St. Louis had told him that Awon would pay them in cash if they burned down the Ames Street property. Jorge never spoke to Awon directly and because the first fire was unsuccessful Jorge never received payment. The district court concluded that Jorge's second hand account of Awon's involvement had a negligible impact on the outcome. The district court's conclusion is supported by the record. Jorge's testimony focused almost exclusively on James St. Louis's involvement in the first fire. His testimony implicated Awon only tangentially. Moreover, given that James St. Louis was acquitted of the charges related to the first fire, it is unclear if Jorge's testimony had any impact on the trial's outcome.

---

[4]The district court did not refer to the two unsworn reports of Agent Wlodyka which had been submitted with the government's opposition to Awon's motions in which Wlodyka stated that Jorge had recanted his affidavit filed with Awon's motion.

Awon's claim that his sentence should be vacated and the case remanded to the district court for a new trial is meritless.

## 2.        **Jurisdiction**

Awon also argues that the district court erred when it refused to vacate his conviction for the second fire (Count V). According to Awon the government failed to adduce sufficient evidence to establish that the building was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" as required by the statute.  18 U.S.C. § 844(i).  As a result, Awon contends, the district court lacked subject matter jurisdiction and his conviction as to Count V should be vacated.[5]

Before we can reach the merits of Awon's argument, we must first address the government's contention that Awon procedurally defaulted his claim by failing to raise it on direct appeal.  Awon concedes that he did not appeal concerning the

_____

[5]We note at the start that, even if Awon's assertion were meritorious, vacating his conviction on Count V would not affect his sentence.  Awon received a total term of imprisonment of 153 months.  For his conviction under Count V, the district court imposed a 33 month term of imprisonment to be served concurrently with the 33 month sentence he received for his conviction under Count I.  Thus, vacating his conviction and sentence pursuant to Count V would not lower his current sentence.  In addition, his conviction for mail fraud pursuant to 18 U.S.C. § 1341 (Counts VI, and VII) and his conviction for use of fire to commit a felony pursuant to 18 U.S.C. § 844(h)(1) and (2) (Count VIII) were not dependent upon his conviction of arson pursuant to 18 U.S.C. § 844(i).  As a result, if his conviction under Count V is vacated, his conviction under the remaining counts and his subsequent sentence is unaffected.  Thus, regardless of the outcome of our analysis, Awon's 153 month sentence will remain intact.

-17-

court's jurisdiction but claims that subject matter jurisdiction can be noticed at any time.

Contrary to Awon's assertion, this case does not involve subject matter jurisdiction and therefore had to be raised on direct appeal. The district court had subject matter jurisdiction in this case by virtue of the fact that Awon was charged with an offense against the United States. 18 U.S.C. § 3231.[6] The interstate commerce aspect of this case arises as an element of the section 844(i) offense. The statute requires the government to prove, inter alia, that the property involved in the arson was "used in interstate or foreign commerce or in an activity affecting interstate or foreign commerce." If that element is not satisfied then Awon is not guilty; but the court is not by the failure of proof on that element deprived of judicial jurisdiction. See United States v. DiSanto, 86 F.3d 1238, 1246 (1st Cir. 1996) (upholding section 844(i) as constitutional after Lopez); accord United States v. Tush, 287 F.3d 1294, 1296 (10th Cir. 2002), petition for cert. filed (Aug. 12, 2002) (No. 02-5940) ("The interstate commerce element of § 844(i) 'is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a

_____

[6] 18 U.S.C. § 3231 provides:
The district court of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

-18-

case.'"); <u>United States</u> v. <u>Carr</u>, 271 F.3d 172, 178 (4th Cir. 2001) (same); <u>United States</u> v. <u>Beck</u>, 250 F.3d 1163, 1165 (8th Cir. 2001)(same).

Awon, on appeal, attempts to argue that his procedural default should be excused because he is "actually innocent" because the evidence was insufficient to show that the interstate commerce element had been met under <u>Jones</u> v. <u>United States</u>, 529 U.S. 848 (2000).[7] We reject Awon's actual innocence argument, which suffers from a number of problems. First, his petition under § 2255 makes no claim at all of actual innocence; the government, with justification, says the claim is forfeit. Even if it had not been forfeit, it is doomed. The assertion of actual innocence to excuse

---

[7]We note that Awon had ample opportunity to address the sufficiency of the evidence regarding the building's connection with interstate commerce. In fact, prior to trial, Awon filed a motion to dismiss the arson counts arguing that the Ames Street property did not have a sufficient connection with interstate commerce as required by 18 U.S.C. § 844(i). In his pretrial motion he initiated a peremptory strike at the government's evidence. The district court denied the motion. The question of whether the property was used in interstate commerce was presented to the jury as an element of the offense. The district court instructed the jury that the government had to prove, beyond a reasonable doubt, that the property "was used in or affected interstate or foreign commerce" and defined those terms commensurate with the applicable case law. Awon did not appeal from the district court's denial of his motion to dismiss, neither did he object to nor appeal from the jury instructions nor appeal from his conviction under Count V. He only raised the issue again on February 1, 1999, when he filed his motion for a new trial and his motion pursuant to § 2255. In its decision denying these motions, the district court stated, without discussion, that Awon's argument concerning the jurisdiction of the court was "unconvincing." <u>Awon</u> v. <u>United States</u>, Civil Action No. 99-10207-GAO, slip op. at 7 n.3 (D. Mass. July 1, 2000) (citing <u>Jones</u> v. <u>United States</u>, 529 U.S. 848 (2000)).

a procedural default does not permit a reviewing court to simply dive into defaulted questions of the sufficiency of evidence.

The actual innocence exception is quite narrow and seldom used. Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999). It is reserved for the extraordinary cases of "fundamentally unjust incarceration." Schlup v. Delo, 513 U.S. 298, 320-21 (1995).

Even if we hypothesized that this question was correctly characterized as one of factual innocence and not legal insufficiency, see Sawyer v. Whitley, 503 U.S. 333, 339 (1992), this had none of the hallmarks of the usual actual innocence claim. There is no credible argument that the so-called new evidence affects the interstate commerce nexus, so this is not a situation of an actual innocence claim predicated on new evidence. Schlup, 513 U.S. at 324. Nor is this a death case in which there is a constitutional violation which has probably resulted in the imposition of a death sentence of one who is actually innocent. Dugger v. Adams, 489 U.S. 401, 411 n.6 (1989). And even if we were to consider the claim of insufficiency, it is frivolous under Russell v. United States, 471 U.S. 858 (1985) and United States v. Medeiros, 897 F.2d 13, 16 (1st Cir. 1990).

**III.    Conclusion**

For the reasons state above, the decision of the district court is **affirmed**.