# United States Court of Appeals
## For the First Circuit

No. 13-1496

JOSÉ LUIS CASIANO-JIMÉNEZ,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

David Ramos-Pagán for petitioner.
Tiffany V. Monrose, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for respondent.

March 29, 2016

**SELYA**, **Circuit Judge**.  A criminal defendant's right to testify in his own behalf — or, conversely, not to testify — is a critically important right.  Given the salience of the right, a defendant is entitled to be fully briefed so that he may make an informed choice.  In this case, the defendant did not receive his due.  Consequently, the district court erred in denying the defendant's petition for post-conviction relief under 28 U.S.C. § 2255.

## I.  BACKGROUND

We sketch the factual and procedural terrain in broad strokes.  The reader who thirsts for more exegetic details may slake that thirst by consulting our opinion rejecting the petitioner's direct appeal.  See United States v. Angulo-Hernández, 565 F.3d 2, 4-7 (1st Cir. 2009).

In 2009, petitioner-appellant José Luis Casiano-Jiménez was convicted of conspiring to smuggle narcotics by ship into the United States.  At trial, the petitioner's defense was based on lack of knowledge: he maintained that he was unaware that any contraband was clandestine aboard the ship.  None of the seven defendants (including the petitioner) took the stand to testify.  Rather, they presented a joint defense through a single expert who examined the vessel and opined that — based on the hidden location of the contraband — it was possible that none of the crew members were aware that drugs were on board.

The jury found the captain and the engineer, along with the petitioner (whom the government characterized as the ship's first officer) and one other crew member, guilty of conspiring to possess controlled substances with intent to distribute and aiding and abetting.[1]  See 18 U.S.C. § 2(a); 46 U.S.C. §§ 70503(a)(1), 70506(b).  The jury acquitted three other crew members (all ordinary seamen).  The district court proceeded to sentence the convicted defendants (including the petitioner) to lengthy prison terms.

On direct review, the convicted defendants challenged the jury verdicts on various grounds, including the alleged insufficiency of the evidence.  We affirmed, though one member of the panel dissented on the basis that the evidence, though sufficient to support the verdicts against the captain and the engineer, did not suffice to show that the other two convicted defendants (including the petitioner) were aware of any drugs being on board.  See Angulo-Hernández, 565 F.3d at 13-18 (Torruella, J., concurring in part and dissenting in part).  The petitioner unsuccessfully sought both rehearing en banc and a writ of certiorari, and his conviction and sentence became final.

---

[1] The jury also found this group of defendants guilty of aiding and abetting the possession of a machine gun.  See 18 U.S.C. §§ 2(a), 924(c)(1)(B)(ii).  The district court, however, wiped out this portion of the jury verdict, granting judgments of acquittal across the board.  See Fed. R. Crim. P. 29(c).

The petitioner filed a timeous section 2255 petition for post-conviction relief that raised, inter alia, a claim that his trial counsel was ineffective for failing to advise him of his right to testify in his own behalf.[2] The district court denied the petition and refused to grant a certificate of appealability (COA). See 28 U.S.C. § 2253(c)(2). This court granted a COA, however, limited to the plaint that the petitioner was entitled to an evidentiary hearing on his ineffective assistance of counsel claim. By unpublished order, we then remanded the case to the district court for such an evidentiary hearing. See Casiano-Jiménez v. United States, No. 11-2049 (1st Cir. Nov. 30, 2012) (unpublished order).

The district court held the evidentiary hearing in March of 2013. The petitioner and his trial counsel, Frank Inserni, both testified. They agreed that Inserni had never explained to the petitioner either that he had a right to testify in his own behalf or that the decision to do so belonged exclusively to him. Inserni added that the lawyers for all the defendants collectively decided that "it would be detrimental" to have any of the defendants testify. They chose instead to retain a single expert to present a "lack of knowledge" defense on behalf of all the

---

[2] The petitioner also put forth other grounds for section 2255 relief, but those grounds have been abandoned and need not concern us.

- 4 -

defendants.  The lawyers proceeded to communicate this strategy to the defendants at a group meeting.

The petitioner's testimony fit seamlessly with Inserni's testimony.  The petitioner acknowledged that he had spoken to Inserni about testifying, but confirmed that Inserni had not advised him of his right to testify.  He likewise corroborated Inserni's version of what was said at the group meeting.

In a three-page unpublished order, the district court again rejected the section 2255 petition.  It also declined — as it had before — to issue a COA.  The petitioner nevertheless filed a notice of appeal.  He then requested and received a COA from this court.  Briefing and oral argument followed,[3] and we took the matter under advisement.

## II.  ANALYSIS

Our analysis begins with an overview of the legal landscape and then proceeds to the merits of the petitioner's appeal.

### A.  The Legal Landscape.

"[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a

---

[3] Shortly before oral argument in this court, the government informed us that the petitioner had completed his prison term and had been returned to Colombia.  He remains subject, however, to a 5-year term of supervised release, and the government concedes that his appeal is not moot.

claim of ineffective assistance of counsel." United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992). Such a claim may properly be raised by a petition for post-conviction relief under 28 U.S.C. § 2255. See Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007).

Prevailing on an ineffective-assistance claim necessitates two showings: the defendant "must demonstrate that counsel's performance fell below an objective threshold of reasonable care and that this deficient performance prejudiced him." United States v. Caramadre, 807 F.3d 359, 371 (1st Cir. 2015); see Strickland v. Washington, 466 U.S. 668, 687 (1984). The prejudice prong requires a defendant to establish that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. See Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012).

In any trial, a defendant's right to testify in his own defense is a "fundamental constitutional right" and is "essential to due process of law in a fair adversary process." Rock v. Arkansas, 483 U.S. 44, 51, 53 n.10 (1987) (quoting Faretta v. California, 422 U.S. 806, 819 n.15 (1975)). The defendant's lawyer, rather than the trial judge, bears the primary responsibility of informing and advising the defendant of this right, including its strategic ramifications. See Teague, 953

F.2d at 1533. Similarly, the defendant's lawyer bears the primary responsibility of explaining that the choice of whether or not to testify belongs to the defendant. See id. It follows inexorably that "[t]he right to testify may not be waived by counsel acting alone." Owens, 483 F.3d at 58 (citing cases). If the defendant is unaware of his right to testify and counsel, without consultation, unilaterally declines to call the defendant as a witness in his own behalf, the defendant's right to make an informed decision has been nullified. See id. at 59.

Viewed against this backdrop, it is not surprising that we have held that an attorney's failure to inform a defendant of his right to testify comprises constitutionally deficient performance. See id. at 58; see also Teague, 953 F.2d at 1534 (explaining that such a failure amounts to an attorney's neglect of a "vital professional responsibility"). In determining whether a lawyer has adequately apprised his client of this fundamental right, no particular formulation is required. See Owens, 483 F.3d at 60 n.10. There are no magic words; the inquiry is whether "some sort of conversation" has occurred between the attorney and his client, such that "the client can make a knowing and informed decision" regarding whether to testify in his own defense. Id.

B. **The Case at Hand**.

We now move from the general to the specific. Where, as here, a petitioner appeals the denial of post-conviction relief

- 7 -

following an evidentiary hearing, we review the district court's findings of fact for clear error. See Owens, 483 F.3d at 57. Under this rubric, credibility determinations are entitled to equal or greater deference. See Awon v. United States, 308 F.3d 133, 141 (1st Cir. 2002); Keller v. United States, 38 F.3d 16, 25 (1st Cir. 1994). Questions of law, however, engender de novo review. See Owens, 483 F.3d at 57.

We start with an appraisal of trial counsel's performance. At the evidentiary hearing, Inserni was asked point-blank whether he had advised the petitioner of his right to testify. The attorney admitted unequivocally that he had not informed the petitioner about this right. Rather, a group meeting transpired at which counsel for all of the defendants "explained to them . . . that it would not be advisable for any of them to take the stand" and that the attorneys had collectively agreed that a single expert would present the rudiments of a "lack of knowledge" defense on behalf of all the defendants. The petitioner's testimony on these points echoed that of his trial counsel.

In a terse rescript, the district court concluded that the petitioner's claim was "inherently incredible." The court made no explicit credibility findings — yet it refused to credit Inserni's and the petitioner's statements that the petitioner had never been apprised of his right to testify. Focusing instead on

- 8 -

Inserni's description of the joint meeting among the defendants and their counsel, the court held that the petitioner had been sufficiently notified of his fundamental constitutional right to testify.

Although we recognize that the standard of review is deferential, see Awon, 308 F.3d at 141, the foundation upon which the district court's holding rests is as insubstantial as a house built upon the shifting sands. The holding assumes that the discussion at the group meeting served as a sufficient surrogate both for the explanation of the right to testify that Inserni owed to the petitioner and for the petitioner's informed decision about whether to testify in his own defense. For aught that appears, those assumptions are plucked out of thin air: their frailty is made readily apparent by a careful examination of the testimony about the joint meeting.

Inserni testified that the assembled defense lawyers told the assembled defendants that the lawyers "thought an expert would be the best way . . . to testify on all their behalf" and explained to them that "it was a consensus . . . it would not be advisable for any of [the defendants] to take the stand." But that consensus was a consensus only among the lawyers. During the meeting, no one told the petitioner, in words or substance, that he had a right to testify; and no one bothered to obtain his informed consent to remaining silent. Plainly, then, the testimony

about the meeting cannot support the district court's finding that there was a collective and informed decision, reached by all the defendants (including the petitioner), that none of them would testify. The most that can be said is that the defense lawyers unilaterally decided that none of the defendants would testify and presented that decision to the defendants as a fait accompli.

We have admonished that "[t]he right to testify may not be waived by counsel acting alone." Owens, 483 F.3d at 58. There must be a focused discussion between lawyer and client, and that discussion must — at a bare minimum — enable the defendant to make an informed decision about whether to take the stand. See id. at 60 n.10. Here, there is simply no evidence that Inserni shouldered even this modest burden.

Inserni's failure to discuss the right to testify with the petitioner is especially troubling given the petitioner's profile. After all, the petitioner was an alien who had limited proficiency in English and no experience with the American criminal justice system. Seen in this light, trial counsel's omission verged on the egregious — and there was nothing "inherently incredible" about either the petitioner's or Inserni's testimony at the section 2255 hearing.

The short of it is that the record contains no evidence sufficient to ground a finding either that the petitioner knowingly waived his right to testify or that he was even aware that such a

right existed. To the contrary, it appears that trial counsel took the bit in his teeth: he decided that the petitioner should not testify and then foisted his decision upon the petitioner without any meaningful dialogue. This usurpation transgressed both the lawyer's professional responsibility to his client and the petitioner's constitutional rights.

The record contains nothing that would suggest a justification for such a gross dereliction of duty. We hold, therefore, that counsel's omission represented constitutionally deficient performance of his duty to his client.

This brings us to the prejudice prong of the ineffective-assistance inquiry. The court below did not address this issue except to state that the petitioner's testimony would have been "the same" as that of the defense expert. We do not agree.

The defense expert testified, based on his experience generally and the concealed placement of the contraband on board the ship,[4] that it was "possible" that none of the defendants knew that the ship contained drugs. Although this testimony aligned with the theme of the defense, it fell far short of what the petitioner, had he testified, could have added. A party's explicit

---

[4] The contraband was secreted in a cache below the crew's quarters, covered by multiple layers of plywood and placed underneath a metal hatch. See Angulo-Hernández, 565 F.3d at 6. The concealment was so artfully done that, after the vessel was intercepted and seized, it took the Coast Guard almost a week to discover the drugs. See id.

disclaimer of knowledge may well have more weight than an expert's theoretical conclusion.  Cf. Rock, 483 U.S. at 52 (observing that "the most important witness for the defense in many criminal cases is the defendant himself").  That appears to be the case here.

The petitioner's testimony at the evidentiary hearing revealed that he would have been able to tell the jury:

- prior to the voyage, he had never met either the captain or any of the other crew members;

- he had never before set foot on that particular ship;

- he signed on to the voyage only as an "able-bodied seaman";

- he had no knowledge of drugs being brought onto the ship; and

- it was not until he was aboard the ship that (to fill a vacancy) he was pressed into service as "first officer."

Contrary to the district court's avowal, the petitioner's testimony was not "the same" as the expert's testimony, but was materially different (and far more exculpatory).  Though the expert testified to the petitioner's hypothetical lack of knowledge, the petitioner would have testified as to what he actually knew.  So viewed, the petitioner's testimony could have been a game-changer. Cf. Owens, 483 F.3d at 59 (explaining that "[a] defendant's testimony as to non-involvement should not be disregarded lightly").

- 12 -

The bottom line is that a third party's testimony as to what a defendant may have known cannot fairly be equated with the defendant's own first-hand account of what he actually knew. Here, moreover, the petitioner's testimony would have been significant even beyond his direct denial of culpable knowledge. He would have explained away his status as "first officer" of the ship, and made pellucid that he was a stranger to the captain and the crew. These facts would have bolstered the petitioner's claim that he was unaware of the presence of any contraband on the ship.

Given this tableau, prejudice is obvious. The petitioner's conviction depended, in material part, on the government's ability to persuade the jury that he knew the ship was ferrying drugs. See Angulo-Hernández, 565 F.3d at 8. The petitioner's testimony would have hit this issue head-on and could very well have turned the tide.

Nor does the record offer any basis for believing that the petitioner, properly informed of his rights, would have made a tactical decision not to take the stand. Nothing in the record militated against the petitioner's testifying in his own defense. He had no criminal history, and Inserni testified that when it was related to him by the petitioner, he found the petitioner's story to be credible. What is more, the petitioner's account was consistent with that of the defense expert and it would not have

been necessary to alter the joint defense strategy had the petitioner elected to testify.

Last — but far from least — the government's case was thin.[5] The government's proof was almost entirely circumstantial, and three of the petitioner's codefendants — all ordinary seamen — were acquitted. We think that this mixed verdict raises a substantial question as to whether the petitioner's conviction resulted from the government's portrayal of him as the "first officer." The petitioner's explanation of how this status came about may well have had decretory significance.

We conclude, without serious question, that there is a reasonable probability that the petitioner's testimony could have tipped the scales in his favor. See Owens, 483 F.3d at 59 (noting that "[a] defendant's testimony could be crucial in any trial"). Had the petitioner been appropriately informed of his right to testify and had he in fact testified and been found credible by the jury, exoneration was a likely prospect.

## III. CONCLUSION

We need go no further. Because the record shows with conspicuous clarity both that the petitioner received

---

[5] Even without the petitioner's testimony, this court divided two-to-one on whether the evidence against the petitioner was sufficient to convict. See Angulo-Hernández, 565 F.3d at 14-18 (Torruella, J., concurring in part and dissenting in part). Furthermore, notes sent to the court during jury deliberations indicated strong divisions among the jurors.

constitutionally ineffective assistance of counsel at his criminal trial and that he was prejudiced as a result, the district court ought to have granted his section 2255 petition.  Its failure to do so was reversible error.  Consequently, we <u>reverse</u> the judgment below and <u>remand</u> with instructions to <u>vacate</u> the petitioner's conviction and sentence.

**<u>Reversed and remanded.</u>**