# United States Court of Appeals
## For the First Circuit

No. 15-1921

JOSÉ ANTONIO RIVERA-RIVERA,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marcos E. López, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Eric Alexander Vos, Federal Public Defender, and Hector L. Ramos-Vega, First Assistant Federal Public Defender, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

December 23, 2016

**SELYA**, **Circuit Judge**.   Where a case hinges on a credibility call, the battle is almost always won or lost in the trial court.   This case — in which a convicted defendant turned federal habeas petitioner recalls the critical events differently than his quondam lawyer — illustrates the point.   Although the record has some ragged edges, we discern no clear error in the magistrate judge's decision to credit the lawyer's version of events.   Accordingly, we affirm the denial of relief under 28 U.S.C. § 2255.

## I.   BACKGROUND

The pertinent facts and the travel of the case may be swiftly chronicled.   In May of 2008, petitioner-appellant José Antonio Rivera-Rivera was charged, along with over 100 codefendants, in connection with a sprawling drug-trafficking enterprise operating in and around Ponce, Puerto Rico. Specifically, the petitioner was charged in counts one through five and count seven.   Count one charged him with conspiracy to possess with intent to distribute a supermarket of controlled substances.   See 21 U.S.C. §§ 841(a)(1), 846.   Counts two through five charged him with possession with intent to distribute heroin, cocaine base, cocaine, and marijuana, respectively, in or near a protected location.   See id. §§ 841(a)(1), 860.   Count seven sought related criminal forfeitures.   See id. § 853.   The government's theory of the case was that the petitioner was a "runner," meaning

- 2 -

that he supervised retail sellers' day-to-day activities, supplied them with drugs for distribution, and collected proceeds.

The petitioner surrendered to the authorities in mid-2008, and the district court appointed Raymond Rivera-Esteves as his attorney. He was thereafter released on bail pending trial.

On January 19, 2010, the petitioner tendered a straight guilty plea. The parties stipulated that the quantity of drugs for which he was accountable amounted to fifty grams of cocaine base. On May 7, 2010, the district court convened a sentencing hearing. The court explained the benefits of the safety valve option to the petitioner. See 18 U.S.C. § 3553(f); USSG §5C1.2.[1] The petitioner declined to seek such an adjustment. The court proceeded to sentence him to a ten-year term of immurement (the statutory minimum).

Shortly after the court pronounced sentence, the petitioner shifted gears and told Rivera-Esteves that he was interested in the safety valve after all. Rivera-Esteves moved to correct the sentence, see Fed. R. Crim. P. 35, but the court denied

---

[1] The safety valve provision, created by statute and incorporated into the sentencing guidelines, allows a sentencing court to disregard an otherwise mandatory minimum sentence if the defendant meets certain criteria. See United States v. Marquez, 280 F.3d 19, 20, 22 (1st Cir. 2002). The purpose of the provision is "to mitigate the harsh effect of mandatory minimum sentences on certain first offenders who played supporting roles in drug-trafficking schemes." United States v. Ortiz-Santiago, 211 F.3d 146, 150 (1st Cir. 2000).

the motion, concluding that the charges to which the petitioner had pleaded precluded him from receiving a shorter sentence. The petitioner appealed, but to no avail: we rejected his argument that a retroactive application of the Fair Sentencing Act of 2010 entitled him to a sentence reduction. See United States v. Rivera-Rivera, No. 10-1817 (1st Cir. Dec. 22, 2011) (unpublished order).

In November of 2012, the petitioner moved pro se to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. His pro se motion raised three claims, all premised on ineffective assistance of counsel. The parties consented to proceed before a magistrate judge, see id. § 636(c)(1), who ordered the government to respond to the petitioner's motion. In due course, the magistrate judge set an evidentiary hearing limited to the petitioner's third claim: that his then-attorney (Rivera-Esteves) never told him about a nine-year plea offer. At the same time, the magistrate judge appointed the Federal Public Defender to represent the petitioner.[2]

Both the petitioner and his former attorney, Rivera-Esteves, testified at the hearing. They told conflicting tales.

The petitioner testified that he was always willing to plead guilty because he recognized that the evidence against him

---

[2] At the evidentiary hearing, the petitioner's appointed counsel withdrew the other two claims originally asserted in the section 2255 motion. Consequently, those claims are not before us.

was strong. He added, though, that communication with his attorney was poor, that they only met in person three times or so, and that they talked mostly by telephone. Rivera-Esteves, the petitioner said, never informed him that the government had offered a nine-year plea bargain. Rather, the only plea discussions that the petitioner had with Rivera-Esteves involved the likelihood that they could convince the government to extend an offer of either twelve or fourteen years.

The following chronology was developed at the hearing. The petitioner appeared in court on January 19, 2010, for the anticipated commencement of his trial. He testified, however, that he did not know that his trial was scheduled to begin; Rivera-Esteves simply called him the day before and instructed him to be in court. The petitioner thought that he was going to attend a meeting about a possible plea deal.

The petitioner added that he and his attorney had never met to prepare for trial. When he learned that trial was in the offing, the petitioner entered a straight guilty plea rather than face an unexpected trial.

The petitioner testified that he first suspected that he had been offered a plea deal shortly after sentencing (while he was being held in custody at a facility in Guaynabo, Puerto Rico). There, he came across several of his coconspirators, including

other runners.  Many of their sentences were less onerous than his.[3]

The parties stipulated that the prosecutor had extended a nine-year plea offer to Rivera-Esteves, acting on the petitioner's behalf, on March 18, 2009, with an expiration date of March 23, 2009.  The petitioner testified that his first definite knowledge of the nine-year plea offer came when he read the government's response to his section 2255 motion.  The petitioner alleged that he would have accepted the offer had he known of it.

Rivera-Esteves also testified.  Although he could not remember many of the details about the petitioner's case given the passage of years between the dates of the critical events and the date of the evidentiary hearing, he recalled that he had discussed the nine-year plea offer with the petitioner no fewer than six or seven times.  He testified that he strongly encouraged the petitioner to accept the offer, but the petitioner spurned his advice and insisted on seeking a more favorable deal or (if none was available) going to trial.  Rivera-Esteves could not remember if he had communicated the plea offer to the petitioner before March 23, 2009, but he recalled continuing to encourage the petitioner to consider the offer beyond that date because it was

---

[3] The magistrate judge took judicial notice of the other runners' sentences.  By and large, those sentences were shorter than the sentence that the petitioner received.

his understanding that there would still be an opportunity to secure those terms.

Inasmuch as Rivera-Esteves could not plot a precise timeline, the magistrate judge allowed him to refer to his Criminal Justice Act (CJA) voucher, see 18 U.S.C. § 3006A(d), to refresh his recollection.[4]  Rivera-Esteves cautioned, though, that not all of his interactions with the petitioner were set out in the voucher; instead, the voucher reflected only those interactions for which he had decided to bill.  Pertinently, the voucher contained entries for telephone calls on both February 18 and February 23, 2009.  These entries specifically noted that the petitioner and Rivera-Esteves had discussed a plea offer.  Rivera-Esteves explained that these entries "probably" signified that the government had made the nine-year plea offer verbally before transmitting the written offer in mid-March.[5]  Rivera-Esteves filed a motion for change of plea on February 23, 2009.  The next day, however, he asked that the motion be stricken from the record.  At the evidentiary hearing, he explained that he had filed the initial motion to "take[] advantage of the plea offer that was extended,"

_____

[4] We use the term "voucher" to include both the voucher itself and the associated voucher paperwork.  The voucher materials contained in the record do not reflect a date of preparation.  The last date that appears on the voucher worksheet, however, is in October of 2010.

[5] Neither side introduced evidence of any other plea offer extant during the February-March time frame.

but moved to strike it after a telephone conversation with the petitioner and his family during which the petitioner declared that he did not want to accept the plea offer.

The voucher further reflected that, on March 19, 2009 — the day after the government extended the nine-year plea offer in writing — Rivera-Esteves made several telephone calls to the petitioner's home. He was apparently unable to get in touch with the petitioner. The next communication memorialized in the voucher (a telephone call that transpired on March 23, 2009) indicates that Rivera-Esteves spoke to the petitioner about a plea offer. The voucher notes that the petitioner requested to meet with Rivera-Esteves on March 30 to discuss the offer, and Rivera-Esteves filed a motion for an extension of time to conclude plea negotiations on March 23, 2009. The district court granted this motion.

There is no indication in the record that a meeting ever took place on March 30, but Rivera-Esteves testified that he and the petitioner met at a later date to discuss both the plea offer and the strength of the government's case. Rivera-Esteves also testified that at some point he made a counteroffer to the government of seven or eight years, but the prosecutor would not budge. Rivera-Esteves stated that, faced with the government's intransigence, the plan was to go to trial.

On the day the trial was set to commence, however, the petitioner had a change of heart and decided to plead guilty. The government was no longer disposed to settle for a nine-year prison term; it insisted on a straight guilty plea (although it did express a willingness to stipulate to the quantity of drugs for which the petitioner would be held responsible). The petitioner agreed to enter such a plea. The district court's acceptance of the plea and its imposition of the ten-year sentence followed.

At the conclusion of the evidentiary hearing, the magistrate judge took the matter under advisement. He subsequently denied the petitioner's section 2255 motion in a written rescript. He found Rivera-Esteves's version of events to be generally "consistent and credible." In this regard, the magistrate judge made eight crucial findings, which we quote below:

> (1) there was a 9-year plea offer made by the government; (2) said offer was communicated by counsel Rivera-Esteves to petitioner on at least 6 or 7 occasions; (3) petitioner made a counteroffer of 7, or possibly even 8, years of imprisonment; (4) the government rejected the 7-8 year counteroffer; (5) petitioner failed to accept the 9-year offer within the deadline set by the government, prompting the government to withdraw said offer; (6) on the day that the trial was scheduled to begin, petitioner changed his mind and decided to enter a guilty plea, but by that time, the government was not interested in pursuing any plea agreements; (7) petitioner decided to enter a straight plea, but consciously rejected the safety valve option after being warned by both counsel Rivera-Esteves and the court about the benefits of the safety valve; (8) soon after the sentencing hearing was over petitioner seemed to regret his decision regarding the safety valve, but by that time, the sentence had already been imposed.

Based on these findings, the magistrate judge denied the section 2255 motion. The petitioner subsequently requested and received a certificate of appealability. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). This timely appeal ensued.

## II. ANALYSIS

We begin our analysis with a peek at the legal landscape. Under 28 U.S.C. § 2255, an individual in federal custody may request that the sentencing court vacate, set aside, or correct a sentence imposed in violation of federal law. See Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002). To this extent, section 2255 functions as "a surrogate for the historic writ of habeas corpus." Id. A claim of ineffective assistance of counsel, rooted in the Sixth Amendment, may be raised by means of a section 2255 motion. See Casiano-Jiménez v. United States, 817 F.3d 816, 819-20 (1st Cir. 2016); United States v. Mala, 7 F.3d 1058, 1062-64 (1st Cir. 1993).

To prevail on a claim of ineffective assistance of counsel, a petitioner must "show that counsel's performance was deficient." Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir. 2002) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). In other words, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." Strickland,

- 10 -

466 U.S. at 687.  The petitioner also must show that he was prejudiced by counsel's deficient representation.  See Ouber, 293 F.3d at 25.

A defense attorney in a criminal case has an obligation to keep his client apprised of plea offers made by the government. See Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012).  The failure to inform a client of a plea offer ordinarily constitutes ineffective assistance of counsel.  See id.; United States v. Rodriguez Rodriguez, 929 F.2d 747, 752 (1st Cir. 1991) (per curiam).  To show that prejudice resulted from such substandard performance, the petitioner "must demonstrate a reasonable probability [that he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel" and "that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  Frye, 132 S. Ct. at 1409.  Finally, the petitioner must adduce facts indicating a reasonable probability that the prosecution would not have withdrawn the plea offer and that the district court would have imposed sentence in accordance with the terms of the offer.  See id.

Where, as here, a petitioner appeals the denial of a section 2255 motion following an evidentiary hearing, we review the district court's legal conclusions de novo and its findings of fact for clear error.  See Casiano-Jiménez, 817 F.3d at 820.  Clear

error is a demanding standard: as we have said, "a party challenging a trial court's factual findings faces a steep uphill climb." Ferrara v. United States, 456 F.3d 278, 287 (1st Cir. 2006). The climb is steeper still when "the challenged findings hinge on the trier's credibility determinations," to which a reviewing court must afford great deference. Id.; see Casiano-Jiménez, 817 F.3d at 820.

Mindful of the stringency of this standard, we have made it pellucid that when the factfinder chooses between two plausible but competing views of the evidence, the factfinder's choice cannot be clearly erroneous. See United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990). In the last analysis, then, we will disturb a trial court's factual findings only if we form a definite and firm conviction that those findings are incorrect. See Pike v. Guarino, 492 F.3d 61, 75 (1st Cir. 2007); Ferrara, 456 F.3d at 287; see also United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

Against this backdrop, we turn to the particulars of the case at hand. The magistrate judge was confronted with two diametrically opposed accounts. He saw and heard the principals and rested his decision on a determination that Rivera-Esteves's version of the salient events was more credible than the petitioner's version. The record, considered as a whole, provides adequate support for the magistrate judge's appraisal.

Although the attorney was unable to recall some details concerning his handling of the petitioner's case, he was able to pinpoint several important contacts. He remembered discussing the nine-year plea offer with the petitioner on at least six or seven occasions. In an effort to put flesh on these bones, he identified dates in February of 2009 on which the two men discussed an impending plea offer (albeit one that had not yet been reduced to writing). Similarly, Rivera-Esteves identified pertinent conversations in March: he recalled that — on the day after the government extended the written plea offer — he made several telephone calls to the petitioner's home. He succeeded in reaching the petitioner on March 23, 2009 (the day the offer was set to expire). As he recalled it, the petitioner was not amenable to accepting the offer.[6]

The record further supports Rivera-Esteves's version of events because it shows contemporaneous court filings and CJA voucher entries referencing plea negotiations. The first of these court filings — a motion for change of plea — was filed on February 23, 2009. The second — a motion to strike the original motion — was filed the next day. These two motions fit seamlessly into

_____

[6] To be sure, the record is silent as to whether Rivera-Esteves told the petitioner that the plea offer would expire on March 23, if not accepted. But that is not the petitioner's complaint. Rather, he asserts that Rivera-Esteves did not inform him at all about the government's nine-year plea offer.

- 13 -

Rivera-Esteves's narrative (i.e., that he had been discussing a plea offer with the petitioner and had urged him to accept it), and the record offers no other coherent explanation for why such motions would have been filed.

So, too, the last motion — a motion for extension of time to conclude plea negotiations — was filed on March 23, 2009, after the attorney's receipt of the government's written plea offer. This filing lends credence to Rivera-Esteves's testimony that he called the petitioner about that offer.

Faced only with supporting evidence in the form of court filings, we would be hard-pressed to say that the magistrate judge's decision to credit Rivera-Esteves's testimony was clearly erroneous. See Ruiz, 905 F.2d at 508. Here, however, there is more: the conclusion suggested by the court filings is reinforced by the CJA voucher, which also references plea negotiations at various points. Those entries, made long before the petitioner brought his section 2255 motion, add weight to Rivera-Esteves's version of events.

Let us be perfectly clear. The testimony at the evidentiary hearing was ragged, and it is troubling that Rivera-Esteves had so blurred a memory of his communications with the petitioner. But several years had passed between the critical events and the evidentiary hearing, and the petitioner's testimony, like the attorney's testimony, was not a model of

precision. Moreover, it is difficult to square the petitioner's claim that he never knew of any plea offer with either the court filings or the CJA voucher.

In the end, the deferential standard of review persuades us that we must honor the magistrate judge's choice between imperfect alternatives. Cf. Chen v. Holder, 703 F.3d 17, 24 (1st Cir. 2012) (stating that because the "trial judge sees and hears the witnesses at first hand and is in a unique position to evaluate their credibility," we should honor his or her "on-the-spot judgments"); Anthony v. Sundlun, 952 F.2d 603, 606 (1st Cir. 1991) (explaining that an appellate court "ought not to disturb supportable findings, based on witness credibility, made by a trial judge who has seen and heard the witnesses at first hand"). A supportable reading of the record is that plea negotiations broke down because the petitioner held out for a better deal that never materialized.

To sum up, the magistrate judge heard conflicting testimony and made a reasonable (though not inevitable) determination regarding credibility. On this scumbled record, there is no principled way in which we can find that determination to be clearly erroneous. See Ruiz, 905 F.2d at 508.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment is

**Affirmed.**

- 15 -